## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MARYLAND
## NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civil No. 1:20-cv-00296-ELH |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NOT LESS THAN ONE HALF ACRE OF | ) | |
| LAND, SITUATE IN ANNE ARUNDEL | ) | |
| COUNTY, STATE OF MARYLAND; | ) | |
| AND UNKNOWN DESCENDANTS OF | ) | |
| MARY A. DOWNS; ET. AL., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF
## MOTION FOR HEARING ON JUST COMPENSATION

Plaintiff United States of America ("United States") hereby respectfully submits this, its Memorandum in Support of Motion for Hearing on Just Compensation. The United States requests that, pursuant to Fed. R. Civ. P. 71.1(h), the Court schedule a hearing on the just compensation to be paid for the property described in the Declaration of Taking ("Subject Property") (Dkt. No. 2).

### I. Background

This condemnation concerns the land known as the Downs Family Cemetery, measuring approximately .096 acres in size, as well as an undefined .5 acres on which it sits. Until June 2020, the cemetery was the location of the gravesites of William and Mary Downs.

William and Mary Downs owned much of the site of modern-day Fort Meade during the mid-1800s. When they died, they were buried on their farm and the land passed to their son, John G. Downs by deed SH-7-315 dated April 30, 1873. *See* Declaration of Michael T. Shields, Dkt.

No. 6-3 at p. 1. On February 17, 1903, following John G. Downs' death, the land passed to his widow, Mary A. Downs, and their three daughters. *Id.* On November 19, 1908, they sold the property to Summerfield and Marinda Disney. *Id.* The deed memorializing that sale included the following clause:

> Reserving therefrom the family graveyard on said farm, with the right to any of the parties of the first part and any of their descendants to use said grave yard for the purpose of the burial of the dead and to enter upon said land at any time for the purpose of visiting and caring for and maintaining said grave yard, said family grave yard to constitute not less than one half acre of land.

Exhibit "B" to the Motion, p. 2.

However, the 1908 deed did not define the borders of the one-half acre reservation, and the only known burials to have ever taken place in the cemetery were those of William and Mary Downs. On June 21, 1919, the Disneys sold the land to the United States, which has owned it ever since. Exhibit "C" to the Motion. At some point during the history of Fort Meade – the date is unknown – someone constructed a chain link fence around the Downs' graves. The .096 acre site within the chain link fence became known as the Downs Family Cemetery.

Fort Meade has grown ever since. For decades, the area around the Downs Family cemetery was a golf course, with the cemetery itself being secluded within a grove of trees. However, the golf course eventually gave way to construction of new facilities for the National Security Agency ("NSA"). Today, the Downs Family Cemetery is located within a highly-secured portion of the NSA's 242-acre Cyber-Defense Campus. The site itself is located immediately adjacent to one of its newest high-security computing centers.

Prior to March 20, 2020, when the Court granted the United States possession of the land at issue, descendants of the 1908 grantors had the right to visit and maintain William and Mary Downs' gravesites, notwithstanding the fact that those gravesites were located in the middle of a

highly secure government installation. The United States Army and the NSA determined that the ability of members of the general public to visit the cemetery was incompatible with the security requirements of the NSA campus. For that reason, they determined that the cemetery needed to be condemned and the gravesites moved to a location where the Downs' descendants could visit without disrupting NSA operations.

Given that this project involved human gravesites, the United States took great pains to ensure that it was undertaken in as respectful a manner as possible. During construction of the Cyber-Defense Campus, the United States Army Corps of Engineers ("USACE") commissioned an archaeological survey of the area to determine the scope of the cemetery and the possible existence of any unmarked graves. *See* Docket No. 6-1, Declaration of Michele A. Vuotto, at 1. Following the survey, excavation of the area surrounding the fenced-in portion of the Downs Family Cemetery revealed no additional graves. At the conclusion of that excavation, only the fenced-in portion of the Downs Family Cemetery, along with an area extending approximately 5-10 feet outside of that fence, remained undisturbed.

USACE identified the Bethel Cemetery as a suitable relocation site for William and Mary Downs. While the cemetery is still on-base, it is located in a much less-secure and more accessible portion of the facility. Additionally, USACE identified other members of the Downs family that were already buried at the Bethel Cemetery. *See* Docket No. 6-2, Declaration of Sarah E. Alexander.

Prior to filing this action, the United States undertook considerable effort to identify every descendent of the conveyors of the 1908 deed who would need to be notified under Fed. R. Civ. P. 71.1. USACE studied land records, genealogy records, and published a notice in the

Baltimore Sun in order to identify the individuals listed in Schedule G of the Declaration of Taking. *See* Docket No. 6-3, Declaration of Michael T. Shields.

## II. Procedural History

Pursuant to the Declaration of Taking Act, 40 U.S.C. § 3114, and Rule 71.1 of the Federal Rules of Civil Procedure, the United States commenced this condemnation action on February 4, 2020, by filing a complaint and declaration of taking. (Dkt. Nos. 1, 2). The authority for the taking of the land is under and in accordance with 40 U.S.C. §§ 3113 and 3114; 10 U.S.C. § 2663(c); Title II of Division A of P.L. 115-245, and the Department of Defense and Labor, Health and Human Services, and Education Appropriations Act, 2019 and Continuing Appropriations Act, 2019, which appropriated funds.

On February 6, 2020, the United States moved for permission to deposit $1 into the Court registry, and the Court granted that motion on February 28, 2020. (Dkt. Nos. 4, 5). Legal title to the land passed to the United States once just compensation was deposited on March 3, 2020. (*See* Docket Note dated March 3, 2020). While the United States deposited only $1 as just compensation, it also explained that as part of just compensation for the taking, it would (1) re-inter the remains of William and Mary Downs at Bethel Cemetery, assume and provide for their perpetual care costs, and provide visitation rights to those whose visitation rights were extinguished by way of this condemnation. (Dkt. No. 2-7).

The United States moved for possession of the property on March 3, 2020, and on March 20, 2020, the Court granted that motion. (Dkt. Nos. 6 and 10). The Court directed that the United States assume all costs and responsibility as described in the Declaration, Schedule F (Dkt. No. 2-7), relating to the disinterment, removal, transportation, and re-interment of all human remains found in, or adjacent to, the .0096 acre graveyard at issue. (Dkt. No. 10). Additionally, the Court

directed the United States to follow the procedures outlined within Schedule F and to provide the visitation access described therein. *Id.* Between June 1 and June 3, 2020, the United States undertook the relocation of William and Mary Downs' remains from the Downs Family Cemetery to the Bethel Cemetery. *See* Exh. "A" to the Motion. The remains of William and Mary Downs were the only remains discovered during the excavation.

Many of the procedural aspects of this litigation were heavily impacted by the Covid-19 pandemic beginning in March 2020. In particular, for a period of time in spring and summer 2020, Department of Justice personnel (themselves teleworking full-time) had difficulty getting interested parties served with notice of this condemnation, in part because of logistical issues brought on by the move to telework, and in part because the process servers themselves were either not performing service of process actions or were taking longer than usual to complete service. Additionally, service was complicated by the fact that most of the interested parties in this litigation were identified through genealogy records, not through current land or tax records, meaning that many of the addresses that the government was able to find through public records searches were either incorrect or outdated. In fall 2020, the United States learned that one of the interested parties, Ms. Mary Ellen McGoury Alexander, had passed away during the pendency of this action. Pursuant to Fed. R. Civ. P. 71.1, the United States was required to substitute her heirs in her place as interested parties.

After receiving necessary extensions from the Court, and after having been permitted to substitute the necessary parties in place of Mary Ellen McGoury Alexander, the United States completed service on all known and unknown parties. Service was completed on known interested parties on the following dates:

(1) Mary Myers Dunn                               March 16, 2020 (Dkt. No. 8)

5

| | | |
|---|---|---|
| (2) | John M. Myers | March 9, 2020 (Dkt. No. 9) |
| (3) | Courtney Alexander | March 23, 2020 (Dkt. No. 11) |
| (4) | Richard Alexander | March 23, 2020 (Dkt. No. 12) |
| (5) | Mary Ellen McGoury Alexander | March 15, 2020 (Dkt. No. 13) |
| (6) | Jay Cromwell | August 12, 2020 (Dkt. No. 22) |
| (7) | Joseph Cromwell | August 12, 2020 (Dkt. No. 22) |
| (8) | Justin Alexander | September 5, 2020 (Dkt. No. 23) |
| (9) | Eric Andrew Alexander | September 26, 2020 (Dkt. No. 24) |
| (10) | Megan Alexander Waltinger | September 28, 2020 (Dkt. No. 25) |
| (11) | Nancy Waters Keber | October 16, 2020 (Dkt. No. 28) |
| (12) | Amy Lee Myers Cromwell | October 27, 2020 (Dkt. No. 29) |
| (13) | Mary Alexander Carleton | October 29, 2020 (Dkt. No. 31) |

Additionally, pursuant to Fed. R. Civ. P. 71.1(d)(3)(B)(ii), the United States completed service by publication on the following unknown parties on April 4, 2020:

(14)   Unknown Descendants of Mary A. Downs

(15)   Unknown Descendants of George Thomas Beasley;

(16)   Unknown Descendants of Susan Poulton Downs;

(17)   Unknown Descendants of Edna F. Downs;

(18)   Unknown Descendants of John Beasley Myers;

(19)   Unknown Descendants of Mary E. Beasley;

(20)   Unknown Descendants of Lillian E. Beasley a/k/a Lillian E. Waters;

(21)   Mary Elizabeth Waters a/k/a Mary Elizabeth McGoury or her unknown descendants; and

(22)   Unknown Descendants of Richard Raymond Alexander, Sr.

(Dkt. No. 32).

The time period allotted by the Federal Rules of Civil Procedure for any interested party to file an Answer has now elapsed.

### III. Argument

A condemnation is an action *in rem* against the property itself. *Eagle Lake Improv. Co. v. United States*, 160 F.2d 182, 184 (5th Cir. 1947). The two primary issues in a condemnation case are: (1) the United States' right to take the property, and (2) the determination of just compensation for that taking. In order to contest the right to take the property, after being served with the notice of condemnation, a potential landowner must file an answer within 30 days, stating the defense or objection. *See* Fed R. Civ. P. 71.1(e)(2). Here, the time for contesting the taking has passed. No potential landowner filed an answer. Therefore, the remaining issue for this Court to decide is the determination of just compensation. For that to occur, the United States respectfully requests that the Court hold a hearing pursuant to Fed. R. Civ. P. 71.1(h).

Ordinarily, the measure of just compensation owed to an owner of property rights condemned by the federal government is that of the property rights' fair market value. *United States v. 50 Acres of Land*, 469 U.S. 24, 29 (1984)(hereinafter "*Duncanville*")(citing *Olson v. United States*, 292 U.S. 246, 255 (1934)). However, deviation from the fair market value measure of just compensation is required "when market value has been too difficult to find, or when its application would result in manifest injustice to owner or public." *Id.* (quoting *United States v. Commodities Trading Corp.*, 339 U.S. 121, 123 (1950); citing *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 10, n. 14 (1984)).

Instead, in such cases, courts employ the "substitute facilities doctrine." *Id.* at 31 (citing *Brown v. United States*, 263 U.S. 78 (1923), n. 16 (citing *United States v. Certain Property in*

*Borough of Manhattan*, 403 F.2d 800, 803 (2nd Cir. 1968); *United States v. Board of Education of Mineral County*, 253 F.2d 760, 763 (4th Cir. 1958). "The substitute facilities doctrine applies only where the fair market value of the condemned property is not ascertainable." *United States v. 10.56 Acres, More or Less, situated in Whatcom Cty., Wash.*, No. C07-1261-RAJ, 2008 WL 3977614, at *2 (W.D. Wash. Aug. 22, 2008)(citing *Duncanville*, 469 U.S. at 26). "Such cases, for the most part, involve properties that are seldom, if ever, sold in the open market." *United States v. 1.57 Acres of Land, More or Less, Situated in San Diego Cty., Ca.*, No. 12CV3055-LAB MDD, 2015 WL 5254558, at *2 (S.D. Cal. Sept. 9, 2015)(quoting *Duncanville*, 469 U.S. at 30). "In recognition of this unique problem, courts have developed the 'substitute facilities' doctrine as an alternative valuation method in public condemnation proceedings." *Id.* (quoting *Prince William Cnty. Serv. Auth. v. United States*, 25 Cl.Ct. 678, 680 (1992)). "Under the substitute facilities doctrine, courts have recognized that the cost of providing necessary substitute facilities is a proper measure of just compensation if the condemnee has a duty to replace the condemned facility or if substitute facilities are reasonably necessary in the circumstances." *Id.*

The unique circumstances of this condemnation require usage of the substitute facilities doctrine as the proper measure of the just compensation owed. Specifically, the property rights that the United States has condemned are those that grant the descendants of the grantors of the 1908 deed the right to maintain the land as the cemetery and visit those ancestors that are buried there. The United States already owned all of the other rights to this property prior to the condemnation, and because the property rights reserved by the 1908 deed are limited to the grantors' descendants, those rights could not be sold on the open market to non-descendants. In other words, there can be no open market. Nor is there an open market value that would capture

the compensation owed by the United States for relocating William and Mary Downs' gravesites. The substitute facilities doctrine applies and provides the only adequate measure of just compensation.

The United States has already provided appropriate substitute facilities. As detailed in the archeological report attached as Exhibit "A" to the Motion for Hearing on Just Compensation, the remains of William and Mary Downs were relocated to equivalent, nearby gravesites at government-expense between June 1st and 3rd, 2020. Specifically, a team of archeologists carefully exhumed William and Mary Downs' remains on June 1 and June 2, 2020. The remains were then prepared by a local funeral home, placed in new burial vaults, transported to the historic Bethel Cemetery located approximately one mile away, and buried next to other members of the Downs family in a funeral ceremony overseen by the Fort Meade chaplain. The original headstones and footstones were then placed at the new gravesites, actually correcting an error discovered by the archeologists whereby at some point in the past Mary's footstone had been placed over William's remains, and vice versa. Pursuant to the Court's Order of March 30, 2020, the United States will also provide visitation rights to those graves, subject only to Fort Meade's visitation and access policies.

The United States submits that it has provided adequate just compensation in the form of substitute facilities. It has also paid into the Court registry an estimate of just compensation totaling $1, representing nominal compensation for the property rights taken. Such an amount is appropriate when the substitute facilities provided have appropriately mitigated any property rights lost as a result of the condemnation or that the property rights acquired have no market value. *See, e.g., State of Wash. v. United States*, 214 F.2d 33, 39 (9th Cir. 1954); *United States v.*

*50.822 Acres of Land, More or Less, in Nueces Cty., State of Tex.*, 950 F.2d 1165, 1169 (5th Cir. 1992).

"The landowner bears the burden of proving the value of the land taken." *United States v. 1.604 Acres of Land, More or Less, Situate in City of Norfolk, Va.*, 844 F. Supp. 2d 668, 674 (E.D. Va. 2011). Because the United States contends that it has already provided proper just compensation in the form of substitute facilities, it does not intend to call any witnesses at the hearing to offer an opinion on the fair market value of the property rights condemned. Instead, the United States submits to the Court a copy of the archeological report detailing the relocation of William and Mary Downs' remains from the Downs Family Cemetery to the Bethel Cemetery. That report, attached to the Motion for Hearing on Just Compensation as Exhibit "A," describes the substitute facilities provided. The hearing will provide the interested parties an opportunity to be heard should they deem it necessary.

If, following a hearing, the Court agrees with the United States' position that it has provided adequate just compensation in the form of substitute facilities, the $1 in nominal just compensation will remain on deposit with the Court. The owners of the property rights condemned, as determined by the Court, may submit a claim to the Court, and, upon full proof of the right thereto, obtain an order directing payment of the $1 in deposited funds. If the funds remain unclaimed for five years following entry of final judgment, the Clerk then deposits those funds into the Treasury in the name and to the credit of the United States. *See* 28 U.S.C. § 2042. Thereafter, any claimant entitled to any such money may, on petition to the Court and upon notice to the United States and full proof of the right thereto, obtain an order directing payment of just compensation for the property interest acquired.

The United States will then request that the Court enter a final judgment, a proposed form of which is attached to the Motion for Hearing on Just Compensation as Exhibit "E."

## IV. Conclusion

The United States requests that the Court set a hearing to determine the just compensation that is owed as a result of this condemnation. The United States submits that it has provided just compensation in the form of substitute facilities and requests that the Court enter a final judgment in which it finds the same.

Respectfully submitted this the 21st Day of April, 2021.

JEAN E. WILLIAMS
Deputy Assistant Attorney General


By:     s/ *R. Benjamin McMurtray*
        R. Benjamin McMurtray
        Mississippi Bar No. 104550
        Environment & Natural Resources Division
        U.S. Department of Justice
        150 M St. NE, Room 5.105
        Washington, D.C. 20002
        Telephone: (202) 305-0358
        Email:  richard.mcmurtray@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 21st day of April 2021, a copy of this motion which was filed via the CM/ECF system, was mailed via first class mail, postage prepaid, to the following:

1. Nancy Waters McGoury a/k/a Nancy Waters Keber
   1101 Beverley Drive
   Alexandria VA 22302;

2. Amy Lee Myers a/k/a/ Amy Lee Myers Cromwell
   225 E. Ponce de Leon Ave. Apt 311
   Decatur, GA 30030

3. John Michael Myers
   606 Dreams Landing Way
   Annapolis, Maryland 21401;

4. Mary Myers a/k/a/ Mary Myers Dunn
   12349 Lima Lane,
   Reston, Virginia 20191;

5. Richard Raymond Alexander, Jr.
   211 St. James Drive
   Glen Burnie, Maryland 21061;

6. Courtney Rochelle Alexander
   211 St. James Drive
   Glen Burnie, Maryland 21061;

7. Jay Cromwell
   1974 Lilac Ln.
   Decatur, GA 30032-5235;

8. Joseph Cromwell
   1320 North Ave. NE
   Atlanta, GA 30307; and

9. Lee Cromwell
   167 Martha Ave. NE
   Atlanta, GA 30317-1412

10. Mary Martha Alexander Carlton
    42 Webb Road
    Edgecomb ME 04456

11. Eric Andrew Alexander
    1312 Kinlock Circle
    Arnold, MD 21012

12. Megan Alexander Waltinger
    548 W Side Rd.
    Trevett, ME 04537 Boothbay, ME 04537

13. Justin Alexander
    124 Charles Avenue
    Stewartstown, PA 17363

*/s/ R. Benjamin McMurtray*
R. Benjamin McMurtray
*Attorney for Plaintiff United States of America*